1  George L. Hampton IV (State Bar No. 144433)
   Colin C. Holley (State Bar No. 191999)
2  Kathleen D. Rodin (State Bar No. 242328)
   HAMPTONHOLLEY LLP
3  2101 East Coast Highway, Suite 260
   Corona del Mar, California 92625
4  Telephone:  949.718.4550
   Facsimile:  949.718.4580
5  E-mail: ghampton@hamptonholley.com

6  Attorneys for Defendants and Counterclaimants
   B2 BRANDS, INC. and JP BEVERAGES, LLC and
7  Counterclaimant STEVEN TROY VALDEZ

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

10 | PHILIP NEUMAN, an individual; MESA | ) | Case No. EDCV-07-1025 CJC(MLGx)
   | TOP, LLC, a Nevada limited liability | ) |
11 | company; and PT NATIONAL | ) |
   | ENTERPRISES, LLC, a Nevada limited | ) | **(1) ANSWER OF B2 BRANDS,**
12 | liability company, | ) | **INC. AND JP BEVERAGES, LLC**
   | | ) | **TO PLAINTIFFS' FIRST**
13 |              Plaintiffs, | ) | **AMENDED COMPLAINT; AND**
   | | ) |
14 |       v. | ) | **(2) COUNTERCLAIM OF B2**
   | | ) | **BRANDS, INC., JP BEVERAGES,**
15 | B2 BRANDS, INC., a Delaware | ) | **LLC AND STEVEN TROY**
   | corporation; and JP BEVERAGES, LLC, | ) | **VALDEZ AGAINST PHILIP**
16 | a California limited liability company, | ) | **NEUMAN, HILO AT CAMPBELL**
   | | ) | **HALL ASSOCIATES, LLC, MESA**
17 |              Defendants. | ) | **TOP, LLC, PT NATIONAL**
   |_____| ) | **ENTERPRISES, LLC, AND B2**
18 | | ) | **BEVERAGE COMPANY, LLC**
   | B2 BRANDS, INC., a Delaware | ) |
19 | corporation; JP BEVERAGES, LLC, a | ) | <u>DEMAND</u> <u>FOR</u> <u>JURY</u> <u>TRIAL</u>
   | California limited liability company; and | ) |
20 | STEVEN TROY VALDEZ, an individual, | ) |
   | | ) |
21 |              Counterclaimants, | ) |
   | | ) |
22 |       v. | ) |
   | | ) |
23 | PHILIP NEUMAN, an individual; HILO | ) |
   | AT CAMPBELL HALL ASSOCIATES, | ) |
24 | LLC, a New York limited liability | ) |
   | company; MESA TOP, LLC, a Nevada | ) |
25 | limited liability company; PT | ) |
   | NATIONAL ENTERPRISES, LLC, a | ) |
26 | Nevada limited liability company; and B2 | ) |
   | BEVERAGE COMPANY, LLC, a | ) |
27 | Nevada limited liability company, | ) |
   | | ) |
28 |              Counterdefendants. | ) |
   |_____| ) |

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

## ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

B2 Brands, Inc. ("B2 Brands") and JP Beverages, LLC ("JP Beverages") (collectively, "Defendants") answer the First Amended Complaint of plaintiffs Philip Neuman, Mesa Top, LLC ("Mesa Top") and PT National Enterprises, LLC ("PT National") (collectively "Plaintiffs") as follows:

1.  Defendants admit the allegations set forth in Paragraph 1 of the First Amended Complaint.

2.  Defendants admit the allegations set forth in Paragraph 2 of the First Amended Complaint.

3.  Defendants lack sufficient information to admit or deny the allegations set forth in Paragraph 3 of the First Amended Complaint, and, therefore, deny those allegations.

4.  Defendants admit the allegations set forth in Paragraph 4 of the First Amended Complaint.

5.  Defendants admit PT National Enterprises, LLC was formed as a Nevada limited liability company.  Defendants deny PT National Enterprises, LLC is a Nevada limited liability company in good standing.

6.  Defendants admit the allegations set forth in Paragraph 6 of the First Amended Complaint.

7.  Defendants deny that JP Beverages, LLC is a corporation.  JP Beverages, LLC is a California limited liability company.  Defendants admit that JP Beverages, LLC's principal place of business is located in the County of San Bernardino in the State of California.  Defendants deny the remaining allegations set forth in Paragraph 7 of the First Amended Complaint.

8.  Defendants admit the allegations set forth in Paragraph 8 of the First Amended Complaint.

9.  Defendants deny the allegations set forth in Paragraph 9 of the First Amended Complaint.

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

<u>Common Allegations</u>

10.    Defendants admit the allegations set forth in Paragraph 10 of the First Amended Complaint.

11.    Defendants admit that on or about June 15, 2005, Steven Troy Valdez ("Valdez") and Hilo at Campbell Hall Associates, LLC ("Hilo") executed the agreement attached to the First Amended Complaint as Exhibit "A." The agreement speaks for itself as to the terms set forth in the writing. Defendants deny the allegations set forth in Paragraph 11 of the First Amended Complaint to the extent those allegations relate to the intent of the parties or the correct interpretation or enforceability of the terms of the agreement.

12.    Defendants admit that on or about September 20, 2005 Valdez and Philip Neuman ("Neuman") executed the agreement attached to the First Amended Complaint as Exhibit "B." The agreement speaks for itself as to the terms set forth in the writing. Defendants deny the allegations set forth in Paragraph 12 of the First Amended Complaint to the extent those allegations relate to the intent of the parties or the correct interpretation or enforceability of the terms of the agreement.

13.    Defendants admit that on or about September 18, 2005 Valdez and Neuman executed the agreement attached to the First Amended Complaint as Exhibit "C." The agreement speaks for itself as to the terms set forth in the writing. Defendants deny the allegations set forth in Paragraph 13 of the First Amended Complaint to the extent those allegations relate to the intent of the parties or the correct interpretation or enforceability of the terms of the agreement.

14.    Defendants deny the allegations set forth in Paragraph 14 of the First Amended Complaint.

15.    Defendants admit the allegations set forth in Paragraph 15 of the First Amended Complaint.

16.    Defendants admit that Valdez is seeking rescission of the agreements in the action in this Court entitled *Valdez v. Neuman, et al.*, Case No. SACV 06-448

3

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

1  CJC (MLGx) (the "Rescission Action"), and that Valdez offered, in his complaint in

2  the Rescission Action, to restore consideration to Hilo and/or Neuman.  Defendants

3  also admit that the Court entered judgment in the Rescission Action on March 17,

4  2008.  Defendants deny the remaining the allegations set forth in Paragraph 16 of the

5  First Amended Complaint.

6       17.  Defendants deny the allegations set forth in Paragraph 17 of the First

7  Amended Complaint.

8       18.  Defendants admit the allegations set forth in Paragraph 18 of the First

9  Amended Complaint.

10       19.  Defendants admit that in the action in this Court entitled *Valdez v.*

11  *Neuman, et al.*, Case No. SACV 06-448 CJC (MLGx) (the "Rescission Action")

12  Valdez is seeking rescission of the agreements copies of which are attached as

13  Exhibits A, B and C to the First Amended Complaint, as well as another agreement

14  providing for the formation of a Nevada limited liability company called B2

15  Beverage Company, LLC (the "B2 Beverage Company LLC Operating Agreement"),

16  and that Valdez offered, in his complaint in the Rescission Action, to restore

17  consideration to Hilo and/or Neuman.  Defendants also admit that the Court entered

18  judgment in the Rescission Action on March 17, 2008.  Defendants deny the

19  remaining the allegations set forth in Paragraph 19 of the First Amended Complaint.

20       20.  Defendants deny the allegations set forth in Paragraph 20 of the First

21  Amended Complaint.

22       21.  Defendants admit Valdez told John Previti in or about March of 2006

23  that Valdez had during 2005 executed the agreements copies of which are attached as

24  Exhibits A, B and C to the First Amended Complaint.  Defendants deny the

25  remaining allegations set forth in Paragraph 21 of the First Amended Complaint.

26       22.  Defendants deny the allegations set forth in Paragraph 22 of the First

27  Amended Complaint.

28

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

4

1    23.    Defendants allege that in May of 2006, JP Beverages acquired all of the

2  stock in B2 Brands.  Defendants also allege that on or about May 4, 2006, JP

3  Beverages took an assignment of Mike Kerr's interest in a loan and pledge

4  agreement secured by the stock and other assets of B2 Brands, and paid off a

5  "demand note" in Mr. Kerr's favor, in exchange for the sum of $165,928.89.

6  Defendants further allege that on or about May 22, 2006, Valdez entered into an

7  employment agreement with B2 Brands pursuant to which Valdez began receiving

8  the sum of $12,000 per month.  Defendants also allege that Valdez received an

9  option to purchase 100 shares of preferred stock in B2 Brands representing ten (10%)

10  of the outstanding shares of the company, which option was to vest over three years.

11  Defendants deny the remaining allegations set forth in Paragraph 23 of the First

12  Amended Complaint.

13    24.    Defendants allege that in May of 2006, JP Beverages acquired all of the

14  stock in B2 Brands.  Defendants also allege that on or about May 4, 2006, JP

15  Beverages took an assignment of Mike Kerr's interest in a loan and pledge

16  agreement secured by the stock and other assets of B2 Brands, and paid off a

17  "demand note" in Mr. Kerr's favor, in exchange for the sum of $165,928.89.

18  Defendants deny the remaining allegations set forth in Paragraph 24 of the First

19  Amended Complaint.

20    25.    Defendants admit they were aware as of May 8, 2006, that Valdez was

21  in the Rescission Action seeking rescission of the agreements copies of which are

22  attached as Exhibits A, B and C to the First Amended Complaint, as well as the B2

23  Beverage Company LLC Operating Agreement.  Defendants deny the remaining

24  allegations set forth in Paragraph 25 of the First Amended Complaint.

25    26.    Defendants admit that since May of 2006, Defendants have created

26  goodwill in and have vastly increased the value of the malternative beverages

27  through the investment, to date, of over $5 million, and through an ongoing,

28  skillfully-organized, national rollout of the beverages.  Defendants also admit they

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

5

1 │ have purchased millions of dollars worth of inventory and have to date funded and

2 │ managed the manufacture and distribution of nearly 300,000 cases of the beverages

3 │ to over 200 distributors across the country.  Defendants deny the remaining

4 │ allegations set forth in Paragraph 26 of the First Amended Complaint.

5 │       27.    Defendants allege that in May of 2006, JP Beverages acquired all of the

6 │ stock in B2 Brands.  Defendants also allege that on or about May 4, 2006, JP

7 │ Beverages took an assignment of Mike Kerr's interest in a loan and pledge

8 │ agreement secured by the stock and other assets of B2 Brands, and paid off a

9 │ "demand note" in Mr. Kerr's favor, in exchange for the sum of $165,928.89.

10 │ Defendants further allege that on or about May 22, 2006, Valdez entered into an

11 │ employment agreement with B2 Brands pursuant to which Valdez began receiving

12 │ the sum of $12,000 per month.  Defendants also allege that Valdez received an

13 │ option to purchase 100 shares of preferred stock in B2 Brands representing ten (10%)

14 │ of the outstanding shares of the company, which option was to vest over three years.

15 │ Defendants deny the remaining allegations set forth in Paragraph 27 of the First

16 │ Amended Complaint.

17 │       28.    Defendants admit that since May of 2006, Defendants have created

18 │ goodwill in and have vastly increased the value of the malternative beverages

19 │ through the investment, to date, of over $5 million, and through an ongoing,

20 │ skillfully-organized, national rollout of the beverages.  Defendants also admit they

21 │ have purchased millions of dollars worth of inventory and have to date funded and

22 │ managed the manufacture and distribution of nearly 300,000 cases of the beverages

23 │ to over 200 distributors across the country.  Defendants deny the remaining

24 │ allegations set forth in Paragraph 28 of the First Amended Complaint.

25 │       29.    Defendants admit that since May of 2006, Defendants have created

26 │ goodwill in and have vastly increased the value of the malternative beverages

27 │ through the investment, to date, of over $5 million, and through an ongoing,

28 │ skillfully-organized, national rollout of the beverages.  Defendants also admit they

6

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

1 | have purchased millions of dollars worth of inventory and have to date funded and

2 | managed the manufacture and distribution of nearly 300,000 cases of the beverages

3 | to over 200 distributors across the country. Defendants deny the remaining

4 | allegations set forth in Paragraph 29 of the First Amended Complaint.

5 | 30. Defendants admit that since May of 2006, Defendants have created

6 | goodwill in and have vastly increased the value of the malternative beverages

7 | through the investment, to date, of over $5 million, and through an ongoing,

8 | skillfully-organized, national rollout of the beverages. Defendants also admit they

9 | have purchased millions of dollars worth of inventory and have to date funded and

10 | managed the manufacture and distribution of nearly 300,000 cases of the beverages

11 | to over 200 distributors across the country. Defendants deny the remaining

12 | allegations set forth in Paragraph 30 of the First Amended Complaint.

13 | <u>FIRST CLAIM</u>

14 | (Conversion)

15 | 31. Defendants incorporate here by reference their answers to Paragraphs 1

16 | through 30 of the First Amended Complaint.

17 | 32. Defendants deny the allegations set forth in Paragraph 32 of the First

18 | Amended Complaint.

19 | 33. Defendants deny the allegations set forth in Paragraph 33 of the First

20 | Amended Complaint.

21 | 34. Defendants deny the allegations set forth in Paragraph 34 of the First

22 | Amended Complaint.

23 | 35. Defendants deny the allegations set forth in Paragraph 35 of the First

24 | Amended Complaint.

25 | <u>SECOND CLAIM</u>

26 | (Interference with Contractual Relations)

27 | 36. Defendants incorporate here by reference their answers to Paragraphs 1

28 | through 35 of the First Amended Complaint.

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

7

1        37.    Defendants admit that on or about June 15, 2005, Valdez and Hilo

2  executed the agreement attached to the First Amended Complaint as Exhibit "A,"

3  that on or about September 20, 2005, Valdez and Neuman executed the agreement

4  attached to the First Amended Complaint as Exhibit "B," and that on or about

5  September 18, 2005 Valdez and Neuman executed the agreement attached to the

6  First Amended Complaint as Exhibit "C."  Defendants further allege that on or about

7  September 20, 2005, Valdez and Neuman executed the "B2 Beverage Company LLC

8  Operating Agreement."  These agreements speak for themselves as to the terms set

9  forth in the writings.  Defendants deny the allegations set forth in Paragraph 37 of the

10  First Amended Complaint to the extent those allegations relate to the intent of the

11  parties or the correct interpretation or enforceability of the terms of the agreements,

12  and Defendants deny the remaining allegations set forth in Paragraph 37 of the First

13  Amended Complaint.

14        38.    Defendants admit that on or about June 15, 2005, Valdez and Hilo

15  executed the agreement attached to the First Amended Complaint as Exhibit "A,"

16  that on or about September 20, 2005, Valdez and Neuman executed the agreement

17  attached to the First Amended Complaint as Exhibit "B," and that on or about

18  September 18, 2005 Valdez and Neuman executed the agreement attached to the

19  First Amended Complaint as Exhibit "C."  Defendants further allege that on or about

20  September 20, 2005, Valdez and Neuman executed the "B2 Beverage Company LLC

21  Operating Agreement."  These agreements speak for themselves as to the terms set

22  forth in the writings.  Defendants deny the allegations set forth in Paragraph 37 of the

23  First Amended Complaint to the extent those allegations relate to the intent of the

24  parties or the correct interpretation or enforceability of the terms of the agreements,

25  and Defendants deny the remaining allegations set forth in Paragraph 38 of the First

26  Amended Complaint.

27        39.    Defendants deny the allegations set forth in Paragraph 39 of the First

28  Amended Complaint.

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

8

1    40.    Defendants deny the allegations set forth in Paragraph 40 of the First

2  Amended Complaint.

3    41.    Defendants deny the allegations set forth in Paragraph 41 of the First

4  Amended Complaint.

5                              THIRD CLAIM

6              (Interference with Prospective Economic Advantage)

7    42.    Defendants incorporate here by reference their answers to Paragraphs 1

8  through 41 of the First Amended Complaint.

9    43.    Defendants deny the allegations set forth in Paragraph 43 of the First

10  Amended Complaint.

11    44.    Defendants deny the allegations set forth in Paragraph 44 of the First

12  Amended Complaint.

13    45.    Defendants deny the allegations set forth in Paragraph 45 of the First

14  Amended Complaint.

15    46.    Defendants deny the allegations set forth in Paragraph 46 of the First

16  Amended Complaint.

17    47.    Defendants deny the allegations set forth in Paragraph 47 of the First

18  Amended Complaint.

19                             FOURTH CLAIM

20  (Violation of California Business and Professions Code Section 17200 - Unfair

21                            Business Practices)

22    48.    Defendants incorporate here by reference their answers to Paragraphs 1

23  through 47 of the First Amended Complaint.

24    49.    Defendants deny the allegations set forth in Paragraph 49 of the First

25  Amended Complaint.

26    50.    Defendants deny the allegations set forth in Paragraph 50 of the First

27  Amended Complaint.

28

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

9

1

## FIFTH CLAIM

2

(Unjust Enrichment)

3      51.    Defendants incorporate here by reference their answers to Paragraphs 1

4    through 50 of the First Amended Complaint.

5      52.    Defendants deny the allegations set forth in Paragraph 52 of the First

6    Amended Complaint.

7      53.    Defendants deny the allegations set forth in Paragraph 53 of the First

8    Amended Complaint.

9

## SIXTH CLAIM

10

(Imposition of Constructive Trust)

11      54.    Defendants incorporate here by reference their answers to Paragraphs 1

12    through 53 of the First Amended Complaint.

13      55.    Defendants deny the allegations set forth in Paragraph 55 of the First

14    Amended Complaint.

15      56.    Defendants deny the allegations set forth in Paragraph 56 of the First

16    Amended Complaint.

17      57.    Defendants deny the allegations set forth in Paragraph 57 of the First

18    Amended Complaint.

19

## SEVENTH CLAIM

20

(Injunctive Relief)

21      58.    Defendants incorporate here by reference their answers to Paragraphs 1

22    through 57 of the First Amended Complaint.

23      59.    Defendants deny the allegations set forth in Paragraph 59 of the First

24    Amended Complaint.

25      60.    Defendants deny the allegations set forth in Paragraph 60 of the First

26    Amended Complaint.

27

28

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

10

1

## FIRST AFFIRMATIVE DEFENSE

2

### (Failure to State a Cause of Action)

3      61.    Defendants allege that Plaintiffs' First Amended Complaint, and each

4    and every cause of action stated therein, fails to state facts sufficient to constitute a

5    cause of action against Defendants upon which relief can be granted.

6

## SECOND AFFIRMATIVE DEFENSE

7

### (Statute of Limitations)

8      62.    Defendants are informed and believe and upon that ground allege that

9    Plaintiffs' First Amended Complaint and each cause of action contained therein is

10   barred by the applicable statute of limitations, including, but not limited to, the

11   provisions of California Code of Civil Procedure sections 337, 338, 339 and 343.

12

## THIRD AFFIRMATIVE DEFENSE

13

### (Privilege "Good Faith")

14     63.    Defendants are informed and believe and upon that ground allege that at

15   all times relevant hereto, Defendants acted in good faith, without malice, and in a

16   manner which was not outrageous, so as to protect and assert legal and economic

17   rights which they believed existed.  Their actions are, therefore, privileged.

18

## FOURTH AFFIRMATIVE DEFENSE

19

### (Estoppel)

20     64.    Defendants allege that Plaintiffs are equitably estopped from asserting

21   the causes of action contained in the First Amended Complaint, and are barred from

22   any recovery against Defendants, because Plaintiffs and/or their agents engaged in

23   acts and/or omissions inconsistent with the causes of action Plaintiffs now allege,

24   Plaintiffs knew Defendants would rely upon such acts and/or omissions, and

25   Defendants did, in fact, rely upon such acts and/or omissions to their detriment.

26

27

28

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

**FIFTH AFFIRMATIVE DEFENSE**

**(Waiver)**

65.     Defendants allege that Plaintiffs, by their knowledge, statements and conduct and/or the knowledge, statements and conduct of their agents have voluntarily, expressly or impliedly waived their right to assert the causes of action alleged against Defendants in the First Amended Complaint.

**SIXTH AFFIRMATIVE DEFENSE**

**(Laches)**

66.     Defendants allege that Plaintiffs unreasonably delayed the filing of the First Amended Complaint and the notification of Defendants of the basis for the causes of action alleged against them, all of which has unduly and severely prejudiced Defendants in their defense of the action, thereby barring or diminishing Plaintiffs' recovery herein under the doctrine of laches.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

67.     Defendants allege that Plaintiffs, because of their own wrongful conduct, are barred by the doctrine of unclean hands from recovering on any of the causes of action alleged against Defendants in the First Amended Complaint.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Consent)**

68.     Defendants are informed and believe and on that basis allege that Plaintiffs are barred from recovering damages based upon Plaintiffs' consent.

**NINTH AFFIRMATIVE DEFENSE**

**(Failure of Contractual Conditions)**

69.     Defendants are informed and believe and upon that ground allege the failure of conditions precedent, concurrent and subsequent as respects the underlying contracts upon which the claims in Plaintiffs' First Amended Complaint are based, and thus Plaintiffs are not entitled to any benefits thereunder.

12

1

## TENTH AFFIRMATIVE DEFENSE

2

### (Failure to Perform Contract)

3      70.     Plaintiffs are barred from recovery herein by reason of the fact that

4  Plaintiffs failed to perform certain conditions of the underlying contracts upon which

5  the claims in Plaintiffs' First Amended Complaint are based.

6

## ELEVENTH AFFIRMATIVE DEFENSE

7

### (Termination of Contract)

8      71.     Defendants are informed and believe and on that basis allege that the

9  underlying contracts upon which the claims in Plaintiffs' First Amended Complaint

10  are based have terminated by their own terms.

11

## TWELFTH AFFIRMATIVE DEFENSE

12

### (Failure of Consideration)

13      72.     Defendants are informed and believe and thereon allege that each and

14  all of the purported causes of action set forth in the First Amended Complaint are

15  barred by failure of consideration as respects the underlying contracts upon which

16  the claims in Plaintiffs' First Amended Complaint are based.

17

## THIRTEENTH AFFIRMATIVE DEFENSE

18

### (Want of Consideration)

19      73.     Defendants are informed and believe and thereon allege that each and

20  all of the purported causes of action set forth in the First Amended Complaint are

21  barred by want of consideration as respects the underlying contracts upon which the

22  claims in Plaintiffs' First Amended Complaint are based.

23

## FOURTEENTH AFFIRMATIVE DEFENSE

24

### (Abandonment)

25      74.     Defendants are informed and believe and thereon allege that each and

26  all of the purported causes of action set forth in the First Amended Complaint are

27  barred by virtue of Plaintiffs' abandonment of the marks and other intellectual and

28  other property at issue.

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Ratification)**

75.     Defendants are informed and believe and thereon allege that each and all of the purposed causes of action set forth in the First Amended Complaint are barred by Plaintiffs' ratification of the actions allegedly undertaken.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Mistake)**

76.     Defendants are informed and believe and thereon allege that Plaintiffs are barred from recovering damages because mistake excuses Steven Troy Valdez and his assignees from performing in the manner Plaintiffs allege he was obligated to perform under the underlying contracts upon which the claims in Plaintiffs' First Amended Complaint are based.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Invalid Assignment of Trademarks in Gross)**

77.     Defendants are informed and believe and thereon allege that the purported assignment of trademarks alleged in the First Amended Complaint was invalid because it did not include a transfer of the goodwill of the transferring business.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate Damages)**

78.     Defendants are informed and believe and upon that ground allege that at all times herein mentioned, Plaintiffs have failed to use reasonable care to reduce and minimize as much as reasonably possible the damages, if any, and said failure is a direct and proximate cause of any and all damages, if any, sustained by Plaintiffs, and therefore, Defendants are not liable to Plaintiffs for any damages.

HAMPTONHOLLEY LLP
1101 East Coast Highway, Suite 260
Corona del Mar, California 92625

14

1  **NINETEENTH AFFIRMATIVE DEFENSE**

2  **(Punitive Damages)**

3      79.    Plaintiffs' First Amended Complaint, to the extent that it seeks

4  exemplary or punitive damages, violates Defendants' right to procedural due process

5  under the Fourteenth Amendment of the United States Constitution, and the

6  Constitution of the State of California, and therefore fails to state a cause of action

7  upon which either punitive or exemplary damages can be awarded.

8  **TWENTIETH AFFIRMATIVE DEFENSE**

9  **(Lack of Standing)**

10      80.    Defendants are informed and believe and thereon allege that Plaintiffs,

11  and each of them, lack standing to assert the causes of action set forth in the First

12  Amended Complaint.

13  **TWENTY-FIRST AFFIRMATIVE DEFENSE**

14  **(Unjust Enrichment)**

15      81.    Defendants are informed and believe and on that basis allege that

16  Plaintiffs are barred from recovering based upon the equitable doctrine of unjust

17  enrichment.

18  **TWENTY-SECOND AFFIRMATIVE DEFENSE**

19  **(Illegal Contract)**

20      82.    Any prospective recovery herein is barred by the illegality of the

21  underlying contracts upon which the claims in Plaintiffs' First Amended Complaint

22  are based.

23  **TWENTY-THIRD AFFIRMATIVE DEFENSE**

24  **(Set-Off)**

25      83.    Defendants allege that they have incurred damages by reason of

26  Plaintiffs' conduct and have a right to a set-off against any amounts found to be due

27  and owing to Plaintiffs by way of damages.

28

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

15

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Frustration of Purpose)

84.    Defendants allege that Plaintiffs' acts have interfered with and frustrated the purpose and intent of the underlying contracts upon which the claims in Plaintiffs' First Amended Complaint are based, and by reason of Plaintiffs' acts Defendants are excused from any liability of the alleged acts complained of.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Conditions Precedent)

85.    Defendants are informed and believe and thereon allege that Plaintiffs have failed to perform various conditions precedent to any alleged legal duty to or on the part of Defendants.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Anticipatory Repudiation)

86.    Defendants are informed and believe and thereon allege that Plaintiffs breached the underlying contracts upon which the claims in Plaintiffs' First Amended Complaint are based, and that by reason of said breach of contract Steven Troy Valdez and his assignees have been excused of their duty to perform all obligations set forth in said contracts.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Reservation of Rights)

87.    Defendants presently have insufficient knowledge or information on which to form a belief as to whether they may have additional, as yet unstated, affirmative defenses available.  Defendants reserve herein the right to assert additional defenses in the event that discovery indicates that they would be appropriate.

16

## COUNTERCLAIM

Counterclaimants B2 Brands, Inc., JP Beverages, LLC and Steven Troy Valdez (collectively, "Counterclaimants") allege claims against Philip Neuman, Hilo at Campbell Hall Associates, LLC, Mesa Top, LLC, PT National Enterprises, LLC and B2 Beverage Company, LLC (collectively, "Counterdefendants") as follows:

### Subject Matter Jurisdiction

1.     This Court has subject matter jurisdiction over the claims in this counterclaim pursuant to the provisions of 28 U.S.C. § 1332(a).  The amount in controversy exceeds $75,000.00, exclusive of interest and costs.  This Court also has supplemental jurisdiction over the claims in this counterclaim pursuant to the provisions of 28 U.S.C. §1367(a).

### Parties

2.     Counterclaimant B2 Brands, Inc. ("B2 Brands") is a Delaware corporation with its principal place of business in the County of San Bernardino, State of California.

3.     Counterclaimant JP Beverages, LLC ("JP Beverages") is a California limited liability company with its principal place of business in the County of San Bernardino, State of California.

4.     Counterclaimant Steven Troy Valdez ("Valdez") is, and at all relevant times herein mentioned was, an individual residing in Corona del Mar, Orange County, California.  Valdez joins as a Counterclaimant pursuant to Rules 19 and/or 20 of the Federal Rules of Civil Procedure.

5.     Counterclaimants are informed and believe, and on that basis allege, that counterdefendant Philip Neuman ("Neuman") is an individual currently residing in Miami, Florida.

6.     Counterclaimants are informed and believe, and on that basis allege, that counterdefendant Hilo at Campbell Hall Associates, LLC ("Hilo") is, and at all relevant times herein mentioned was, a New York limited liability company, of

17

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

1    which Neuman is the sole member.  Counterclaimants join Hilo pursuant to Rules 19

2    and/or 20 of the Federal Rules of Civil Procedure.

3         7.    Counterclaimants are informed and believe, and on that basis allege, that

4    counterdefendant Mesa Top, LLC ("Mesa Top") is a Nevada limited liability

5    company that has not done any business since 2005.

6         8.    Counterclaimants are informed and believe, and on that basis allege, that

7    counterdefendant PT National Enterprises, LLC ("PT National") is a Nevada limited

8    liability company that has not done any business since 2005, and that is not in good

9    standing with the Nevada Secretary of State.

10        9.    Counterclaimants are informed and believe, and on that basis allege, that

11   counterdefendant B2 Beverage Company, LLC ("B2 Beverage Company") is a

12   Nevada limited liability company that has not done any business since 2005, and that

13   is not in good standing with the Nevada Secretary of State.  Counterclaimants join

14   B2 Beverage Company pursuant to Rules 19 and/or 20 of the Federal Rules of Civil

15   Procedure.

16        10.   Counterclaimants are informed and believe, and on that basis allege, that

17   Counterdefendants Neuman, Hilo, Mesa Top, PT National and B2 Beverage

18   Company are jointly and severally liable to Counterclaimants for the acts and

19   occurrences alleged in this Counterclaim.

20        11.   Counterclaimants are informed and believe, and on that basis allege, that

21   at all relevant times herein mentioned each of the Counterdefendants was the agent,

22   employee and/or co-conspirator of the other Counterdefendants, or was otherwise

23   responsible for all of the acts hereinafter alleged, and that such acts were duly ratified

24   by Counterdefendants, with each Counterdefendant acting as an agent of the other

25   Counterdefendant and within the scope and course of their agency.

26

27

28

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

18

**Facts Common To All Claims For Relief**

12.    Beginning in 2003, Valdez developed a unique line of malt-based alcohol beverages in a category of beverages commonly referred to in the industry as "malternative" beverages (hereinafter the "Malternative Beverage Products").

13.    In addition to developing the Malternative Beverage Products, Valdez developed related branding and marketing materials and an extensive, detailed business plan for marketing and sales of the products.

14.    Valdez also developed certain trademarks and trade names intended for use in connection with marketing and sales of the Malternative Beverage Products.

15.    In or about August of 2003, Valdez incorporated B2 Brands, and from that time forward he did all development, marketing and sales of the Malternative Beverage Products through B2 Brands.  B2 Brands did business under the fictitious business name "B2 Beverage Co."

16.    In 2004 and early 2005, B2 Brands and Valdez obtained loans to finance the continuation of the business and incurred debts to a number of creditors.

17.    Among these loans was a loan to Michael Kerr secured by all of the stock in B2 Brands.  On December 21, 2004, Valdez pledged all of the stock in B2 Brands to Michael Kerr as security for a $70,000 loan.  Pursuant to a written Loan and Pledge Agreement, Valdez delivered all of the stock in B2 Brands, including stock powers, to Michael Kerr as collateral.  By its express terms, the Loan and Pledge Agreement required repayment of the loan by December 20, 2005.

18.    In or about April of 2005, a mutual business acquaintance introduced Valdez to Neuman as a potential investor or business partner.  At that time, B2 Brands owned all rights in and to the Malternative Beverage Products.

19.    On or about June 15, 2005, Valdez and Hilo entered into the agreement attached to Plaintiffs' First Amended Complaint as Exhibit "A."  That agreement is made a part of this Counterclaim by this reference.

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

19

20.     On or about September 18, 2005, Valdez and Neuman entered into the agreement attached to Plaintiffs' First Amended Complaint as Exhibit "C." That agreement is made a part of this Counterclaim by this reference.

21.     On or about September 20, 2005, Valdez and Neuman entered into the agreement attached to Plaintiffs' First Amended Complaint as Exhibit "B." That agreement is made a part of this Counterclaim by this reference.

22.     On or about September 20, 2005, Valdez and Neuman also entered into an agreement that provided for the formation, by Valdez and Neuman, of a Nevada limited liability company called B2 Beverage Company, LLC.  A copy of that agreement is attached to this Counterclaim as Exhibit "A," and is made a part of this Counterclaim by this reference.

23.     At the time Valdez and Neuman entered into the September 18, 2005 agreement, Michael Kerr had not been paid back and still held all of the stock in B2 Brands.  Neuman was aware of the Michael Kerr Loan and Pledge Agreement at the time he and Valdez entered into the September 18, 2005 agreement.  Neuman had received a copy of the Loan and Pledge Agreement from Valdez in June of 2005, and Neuman and his agent, Georgia Merkel, had received numerous e-mails from Valdez urging Neuman to immediately pay off the Michael Kerr debt encumbering the B2 Brands stock.

24.     Valdez understood and believed that Neuman was obligated and was going to pay off the Michael Kerr loan as an integral part of the agreements between Valdez and Neuman.  Valdez entered into the September 18, 2005 agreement based upon his understanding that Neuman was going to concurrently satisfy, among other debts, the Michael Kerr debt encumbering the rights purportedly being assigned.

25.     Neither Neuman nor any of the other Counterdefendants ever paid off the Michael Kerr loan.

26.     Neither Neuman nor any of the other Counterdefendants ever manufactured or distributed the Malternative Beverage Products.

20

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

1    27.    Valdez parted ways with Neuman and the other Counterdefendants in
2  December of 2005.  During the approximately six months Neuman and Valdez were
3  supposedly in business together, Neuman and the other Counterdefendants did not
4  even purchase any inventory of the components needed to manufacture the
5  beverages.  To the contrary, Neuman forestalled any use of the rights he ostensibly
6  owned jointly with Valdez by, among other things, cancelling all of the component
7  orders Valdez initiated, and alienating crucial component suppliers by failing to pay
8  overdue invoices.

9    28.    After cancelling component orders Valdez had made in anticipation of a
10 January 2006 production run, Neuman and the other Counterdefendants never went
11 forward with new orders, never took any further steps in connection with the
12 Malternative Beverage Products business after January of 2006, and never made any
13 use of the trademarks associated with the Malternative Beverage Products.

14   29.    On December 16, 2005, even before he and Valdez parted ways,
15 Neuman formed a new company called Premier Beverages LLC ("Premier").
16 Neuman did not tell Valdez he had formed Premier and did not include Valdez as a
17 member of the company.  Though Neuman was aware Premier did not have any
18 rights in and to the Malternative Beverage Products, Neuman instructed Premier's
19 employee, Jennifer Jeter, to investigate how much it would cost Premier to
20 manufacture the beverages.

21   30.    In January of 2006, Neuman elected not to proceed with the production
22 and distribution of the Malternative Beverage Products through Premier or through
23 any other entity because, based upon Jennifer Jeter's investigation of the costs, he
24 had determined the business would not be profitable.

25   31.    After December of 2005, Neuman did not do any business through Mesa
26 Top, PT National, B2 Beverage Company, or any other entity in which Valdez had
27 an ownership interest.  Neuman closed all of the bank accounts held by those entities,
28 and switched his employee, Jennifer Jeter, over to Premier's payroll.  Neuman then

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

21

1  allowed the good standing of Mesa Top, PT National, and B2 Beverage Company to

2  lapse into default and revocation.  Neuman did not revive Mesa Top's good standing

3  until 2007, and then only for the purposes of litigation.

4       32.    Since December of 2005, Neuman and Hilo have made no attempt to

5  perform or tender performance under their agreements with Valdez.

6       33.    In consideration for his purported receipt of joint ownership of the

7  Malternative Beverage Products, Neuman was obligated under his agreements with

8  Valdez to, among other things, fund the purchase of all inventory, fund all operating

9  expenses, and pay off certain of Valdez's preexisting debt.

10       34.    To this day, Neuman has never paid or tendered payment for any

11  inventory related to the production and sale of the Malternative Beverage Products.

12       35.    Since December of 2005, Neuman has not paid or tendered payment for

13  any operating expenses related to the production and sale of the Malternative

14  Beverage Products.

15       36.    To this day, Neuman has never paid or tendered payment for any of

16  Valdez's preexisting debt.

17       37.    On May 4, 2006, JP Beverages paid off B2 Brands' debt to Michael

18  Kerr in exchange for an assignment to JP Beverages of Michael Kerr's interest in the

19  Loan and Pledge Agreement secured by all of the stock in B2 Brands.

20       38.    On May 22, 2006, JP Beverages purchased from Valdez all of his rights

21  in the stock and assets of B2 Brands.

22       39.    Since May of 2006, JP Beverages and B2 Brands have created goodwill

23  in and have vastly increased the value of the Malternative Beverage Products through

24  the investment, to date, of over $6 million, and through an ongoing, skillfully-

25  organized, national rollout of the beverages.

26       40.    Counterclaimants have purchased millions of dollars worth of inventory

27  and have funded and managed the manufacture and distribution of nearly 300,000

28  cases of the beverages to distributors across the country.

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

22

## First Claim

## [Declaratory Relief]

### By All Counterclaimants Against All Counterdefendants

41.     Counterclaimants reallege and incorporate by reference the allegations contained in Paragraphs 1 through 40 as though fully set forth herein.

42.     An actual and justiciable controversy has arisen and now exists between Counterclaimants and Counterdefendants, and each of them, relating to ownership of the property rights in and to the Malternative Beverage Products.

43.     Counterclaimants contend B2 Brands and/or JP Beverages own the property rights in and to the Malternative Beverage Products based upon the facts alleged herein and by virtue of the following:

a.     JP Beverages' acquisition of Michael Kerr's interest in the Loan and Pledge Agreement secured by all of the stock in B2 Brands in May of 2006;

b.     JP Beverages' acquisition from Valdez of all of his rights in the stock and assets of B2 Brands in May of 2006;

c.     The invalidity of the September 18, 2005 assignment agreement as an assignment in gross of trademarks which did not include a transfer of the goodwill of the transferring business;

d.     The invalidity of the September 18, 2005 assignment agreement due to a lack of consideration;

e.     Counterdefendants' failure to perform under the June 15, September 18 and September 20, 2005 agreements; and

f.     Counterdefendants' abandonment of the trademarks and other property rights in and to the Malternative Beverage Products through nonuse.

44.     Neuman, Mesa Top and PT National contend, on the other hand, in their First Amended Complaint, that they own the rights in and to the Malternative Beverage Products.

23

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

1    45.    Counterclaimants desire a judicial determination of ownership of the

2  rights in and to the Malternative Beverage Products and associated marks, including,

3  but not limited to, ownership of the formulas and recipes and ownership of the

4  following federally-registered trademarks:

5         a.    "SANGRIA! BRAND" (Reg. No. 3002693)

6         b.    "HARD CREAMER" (Reg. No. 3169336)

7         c.    "KALIMA" (Reg. No. 3172007);

8         d.    "B2" (Reg. No. 3360463);

9         e.    "B2 BRANDS" (Reg. No. 3360552); and

10        f.    "B2 BEVERAGE COMPANY" (Reg. No. 3360551).

11    46.    Such a declaration is necessary and appropriate at this time in order that

12  the parties may ascertain their rights and duties in connection with ownership of the

13  rights in and to the Malternative Beverage Products.

**Second Claim**

**[Fraudulent Transfer]**

**By B2 Brands and JP Beverages Against Neuman and Hilo**

17    47.    Counterclaimants reallege and incorporate by reference the allegations

18  contained in Paragraphs 1 through 46 as though fully set forth herein.

19    48.    As alleged above, Counterclaimants contend any purported transfer of

20  rights in and to the Malternative Beverage Products, in whole or in part, to

21  Counterdefendants, or any of them, was invalid and is unenforceable.

22    49.    In the alternative and to the extent any purported assignment of rights in

23  and to the Malternative Beverage Products, in whole or in part, to

24  Counterdefendants, or any of them, was valid and is enforceable, such transfer was

25  fraudulent both as to B2 Brands and also as to JP Beverages as the successor-in-

26  interest to B2 Brands' creditors, including, but not limited to, Michael Kerr.

27    50.    Counterdefendants were aware at the time of the purported transfer of

28  rights that B2 Brands and Valdez had outstanding obligations to several creditors,

24

HamptonHolley LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

1  and were aware that the Michael Kerr Loan and Pledge Agreement came due on
2  December 20, 2005.

3      51.    Counterdefendants did not pay any consideration to B2 Brands in
4  exchange for the purported transfer from B2 Brands of the rights in and to the
5  Malternative Beverage Products, and Counterdefendants did not pay off the
6  obligation to Michael Kerr or any of the other creditors.

7      52.    Counterdefendants arranged and effected the purported transfer without
8  any intent to transfer back to B2 Brands consideration of equal value and without any
9  intent to pay off the obligations owed to B2 Brands and Valdez's creditors.

10     53.    The purported transfer, if valid and enforceable, wrongfully deprived B2
11 Brands of its most valuable assets -- the rights in and to the Malternative Beverage
12 Products -- and left B2 Brands unable to pay off its debts to its creditors.

13     54.    As a proximate cause of Counterdefendants' wrongful conduct, B2
14 Brands and JP Beverages have been damaged in an amount subject to proof at trial.

### Third Claim

### [Breach of Written Contract]

### By All Counterclaimants Against Neuman and Hilo

18     55.    Counterclaimants reallege and incorporate by reference the allegations
19 contained in Paragraphs 1 through 54 as though fully set forth herein.

20     56.    Neuman and Hilo have breached their June 15, September 18 and
21 September 20, 2005 agreements with Valdez by, among other things, failing to fund
22 the purchase of any inventory, failing to pay off any of Valdez's preexisting debts,
23 and failing to fund any operating expenses after December 2005.  Neither Neuman
24 nor Hilo has performed or tendered performance of those central obligations of the
25 agreements.

26     57.    At the time of Neuman and Hilo's breach of the agreements, Valdez had
27 performed all of the conditions and things on his part to be done and performed, and
28 was ready, able and willing to perform those terms and conditions on his part to be

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

1  performed or complete performance on his part. Valdez's further performance was
2  excused by Neuman and Hilo's breach and the failure of consideration.

3      58.     As a result of Neuman and Hilo's breach of the agreements, Valdez
4  and/or his successors-in-interest, JP Beverages and/or B2 Brands, have been
5  damaged in an amount subject to proof at trial.

6                              **Fourth Claim**
7      **[Breach of Implied Covenant of Good Faith and Fair Dealing]**
8          **By All Counterclaimants Against Neuman and Hilo**

9      59.     Counterclaimants reallege and incorporate by reference the allegations
10  contained in Paragraphs 1 through 58 as though fully set forth herein.

11      60.     Implied in the June 15, September 18 and September 20, 2005
12  agreements was a covenant by Neuman and Hilo that they would act in good faith
13  and deal fairly with Valdez and that they would do nothing to interfere with his right
14  to receive the benefits of the agreements.

15      61.     Neuman and Hilo breached the covenant of good faith and fair dealing
16  by, among other things, failing to fund the purchase of any inventory, failing to pay
17  off any of Valdez's preexisting debts, and failing to fund any operating expenses
18  after December 2005.

19      62.     As a result of Neuman and Hilo's breach of the covenant of good faith
20  and fair dealing, Valdez and/or his successors-in-interest, JP Beverages and/or B2
21  Brands, have been damaged in an amount subject to proof at trial.

22                              **Fifth Claim**
23                        **[Unjust Enrichment]**
24      **By B2 Brands and JP Beverages Against All Counterdefendants**

25      63.     Counterclaimants reallege and incorporate by reference the allegations
26  contained in Paragraphs 1 through 62 as though fully set forth herein.

27
28

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

64.     As alleged above, Counterclaimants contend any purported transfer of rights in and to the Malternative Beverage Products, in whole or in part, to Counterdefendants, or any of them, was invalid and is unenforceable.

65.     In the alternative and to the extent any purported assignment of rights in and to the Malternative Beverage Products, in whole or in part, to Counterdefendants, or any of them, was valid and is enforceable, Counterdefendants have unjustly received and retained, without paying for them, the benefits of the increases B2 Brands and JP Beverages have made to the value of the rights in and to the Malternative Beverage Products since May of 2006, all to the detriment of B2 Brands and JP Beverages.

66.     Counterdefendants' retention of the benefits B2 Brands and JP Beverages have conferred, including B2 Brands and JP Beverages' investments in the business and the appreciation in the value of the rights in and to the Malternative Beverage Products resulting from such investments, without compensating B2 Brands and JP Beverages, violates principles of justice, equity and good conscience.

67.     JP Beverages and B2 Brands are thus entitled to equitable restitution and/or quasi-contractual recovery from Counterdefendants in an amount subject to proof at trial and believed currently to be in excess of six million dollars ($6,000,000).

### Sixth Claim

### [Declaratory Relief]

### By Valdez Against All Counterdefendants

68.     Counterclaimants reallege and incorporate by reference the allegations contained in Paragraphs 1 through 66 as though fully set forth herein.

69.     An actual and justiciable controversy has arisen and now exists between Valdez and Counterdefendants, and each of them, relating to the enforceability of the 10-year non-compete provisions in the June 15 and September 20, 2005 agreements.

P:\Client\B2 Brands, Inc\Neuman1025\Pleadings\Answer Counterclaim FAC.doc

70.    Valdez contends the 10-year non-compete provisions are unenforceable as unreasonably broad. *See Jones v. Deeter*, 112 Nev. 291 (1996).

71.    Neuman, Mesa Top and PT National contend, on the other hand, in their First Amended Complaint, that the 10-year non-compete provisions are enforceable.

72.    Valdez desires a judicial determination of the unenforceability of the 10-year non-compete provisions.

73.    Such a declaration is necessary and appropriate at this time in order that the parties may ascertain their rights and duties in connection with the enforceability of the 10-year non-compete provisions.

## PRAYER FOR RELIEF

WHEREFORE, Defendants and Counterclaimants B2 Brands, Inc. and JP Beverages, LLC, and Counterclaimant Steven Troy Valdez, respectfully pray for judgment as follows:

### AS TO PLAINTIFFS' FIRST AMENDED COMPLAINT:

1.    That plaintiffs Philip Neuman, Mesa Top, LLC and PT National Enterprises, LLC take nothing by the claims in their First Amended Complaint;

2.    For the costs of suit incurred herein; and

3.    For such other and further relief as the Court deems just and proper; and

### AS TO B2 BRANDS, INC., JP BEVERAGES, LLC AND STEVEN TROY VALDEZ'S COUNTERCLAIM:

1.    For a judicial determination of ownership of the rights in and to the Malternative Beverage Products and associated marks, including, but not limited to, ownership of the formulas and recipes and ownership of the following federally-registered trademarks:

    a.    "SANGRIA! BRAND" (Reg. No. 3002693)

    b.    "HARD CREAMER" (Reg. No. 3169336)

    c.    "KALIMA" (Reg. No. 3172007);

    d.    "B2" (Reg. No. 3360463);

28

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

1       e.    "B2 BRANDS" (Reg. No. 3360552); and

2       f.    "B2 BEVERAGE COMPANY" (Reg. No. 3360551).

3     2.    For a judicial determination of the unenforceability of the 10-year non-

4 compete provisions in the June 15 and September 20, 2005 agreements.

5     3.    For compensatory damages believed to be in excess of $6,000,000.00,

6 subject to proof at trial;

7     4.    For costs of suit; and

8     5.    For such other and further relief as the Court deems just and proper.

9

10 Dated:  March 24, 2008         HAMPTONHOLLEY LLP

11

12                   By: _____

13                       Colin C. Holley

14                       Attorneys for Defendants and
Counterclaimants B2 BRANDS, INC.

15                       and JP BEVERAGES, LLC and
Counterclaimant STEVEN TROY VALDEZ

16

17

18

19

20

21

22

23

24

25

26

27

28

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

29

P:\Client\B2 Brands, Inc\Neuman1025\Pleadings\Answer.Counterclaim.FAC.doc

1

## DEMAND FOR JURY TRIAL

2       Counterclaimants B2 Brands, Inc. and JP Beverages, LLC hereby demand a

3   jury trial of all claims alleged in their Counterclaim in accordance with Rule 38(b) of

4   the Federal Rules of Civil Procedure.

5

6

7   Dated: March 24, 2008               HAMPTONHOLLEY LLP

8

9                               By: _____

10                                  Colin C. Holley

                                Attorneys for Defendants and

11                                  Counterclaimants B2 BRANDS, INC.

                                and JP BEVERAGES, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

30

P:\Client\B2 Brands, Inc\Neuman1025\Pleadings\Answer.Counterclaim.FAC.doc

HAMPTONHOLLEY LLP
2101 East Coast Highway, Suite 260
Corona del Mar, California 92625

EXHIBIT "A"

# OPERATING AGREEMENT

## OF

## B2 BEVERAGE COMPANY, LLC

AGREEMENT, made as of this 30ᵗʰ day of ~~August~~ *September* 2005 , between, STEVEN TROY VALDEZ, (VALDEZ) an individual with address at 427 Iris Avenue, Corona del mar, California , and Philip Neuman, an individual with mailing address at 1350 East Flamingo Road, Suite 3321, Las Vegas, Nevada 89119, (all parties to this Agreement are referred to herein collectively as the **"Members"**).

## W I T N E S S E T H :

WHEREAS, the parties hereto desire to form a limited liability company pursuant to the laws of the State of Nevada for the purposes hereinafter set forth, and to establish their respective rights and obligations in connection with the limited liability company;

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and other valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the Members agree as follows:

### 1. Formation

The parties hereby confirm that they have formed a limited liability company (the **"Limited Liability Company"** or the **"LLC"**) pursuant to the provisions of the Nevada Limited Liability Company Law (the **"LLCL"**), for the purposes and the period and upon the terms and conditions hereinafter set forth. The parties will immediately file the Articles Of Organization of the Limited Liability Company, and agree to execute, acknowledge, swear to and file any other documents required under applicable law.

### 2. Name.

The name of the Limited Liability Company shall be B2 Beverage Company, LLC , and all business of the Limited Liability Company shall be conducted under said name, or such other name as the Members from time to time may determine.

### 3. Purposes.

The purpose of the Limited Liability Company is engage in any lawful activity in connection with the ownership, product development, marketing and distribution of beverages, more specifically set forth in Exhibit A.

#### 4.  Place of Business.

The principal place of business of the Limited Liability Company shall be at 1350 East Flamingo Road, Suite 3321, Las Vegas, Nevada 89119, or at such other or additional places of business within or outside of the State of Nevada as the Members, by unanimous consent, from time to time may designate.

The Limited Liability Company hereby designates the LLC as agent of the Limited Liability Company for the service of process.

#### 5.  Duration.

The Limited Liability Company shall continue in perpetuity until or unless an event hereinafter set forth which causes the termination of the Limited Liability Company.

#### 6.  Capital Contributions.

Each of the Members shall contribute the following to the capital of the Limited Liability Company:

Neuman shall contribute a total of $1,000.00 and receive a one /half (1/2) interest in the LLC.

Valdez shall contribute a total of $1,000.00 and receive a one /half (1/2) interest in the LLC.

#### 7.   Loans and Advances by Members.

If any Member shall loan or advance any funds to the Limited Liability Company in excess of the capital contribution of such Member prescribed herein, such loan or advance shall not be deemed a capital contribution to the Limited Liability Company and shall not in any respect increase such Member's interest in the Limited Liability Company.

#### 8.   Allocations and Distributions.

All Allocations and Distributions shall be the standard allocations and distributions as determined by the Limited Liability Company's accountant in accordance with the provisions of the Internal Revenue Code, the Treasury Department Regulations and other pertinent regulations.

The term **"Members' Percentage Interests"** shall mean the percentages set forth opposite the name of each Member below:

| Member | Percentage Interest |
|--------|---------------------|
| NEUMAN | 50.00   percent (50%) |
| VALDEZ | 50.00   percent (50%) |

### 9.   Distributions.

The profits of the Limited Liability Company shall be equally distributed between the members.

### 10.   Books, Records and Tax Returns.

At all times during the continuance of the Limited Liability Company, the Managing Member shall keep or cause to be kept complete and accurate records and books of account in which shall be entered each transaction of the Limited Liability Company in accordance with generally accepted accounting principles.

The Managing Member shall prepare or cause to be prepared all Federal, State and local income tax and information returns for the Limited Liability Company, and shall cause such tax and information to be filed timely with the appropriate governmental authorities

All such records, books of account, tax and information returns, and reports and statements, together with executed copies of this Agreement, shall at all times be maintained at the principal place of business of the Limited Liability Company, and shall be open to the inspection and examination of the Member or their duly authorized representatives during regular business hours

### 11.   Bank Accounts.

All funds of the Limited Liability Company shall be deposited in the Limited Liability Company's name in such bank account or accounts as shall be designated by the Managing Member. Withdrawals from any such bank accounts shall be made only in the regular course of business of the Limited Liability Company and shall be made upon signature of the Managing Member.

The Managing Members specifically authorize Philip Neuman to open a bank account for the benefit of the LLC, and to execute whatever documents may be necessary for the purpose of opening said bank account.

### 12.   Management of the Limited Liability Company.

The LLC shall be managed by the Managing Member. The Members hereby designate NEUMAN to serve as Managing Member for the Limited Liability Company.

The Managing Member shall have responsibility for the day-to-day management of the business and affairs of the Limited Liability Company and shall devote such time and attention as the Managing Members deem necessary to the conduct and management of the business and affairs of the Limited Liability Company.

The Managing Member is hereby given sole power and authority to execute instruments on behalf of the Limited Liability Company and to otherwise bind the Limited Liability Company. Unless authorized by the Managing Members, no other person shall have the power or authority to execute instruments on behalf of the Limited Liability Company and to otherwise bind the Limited Liability Company.

The Managing Member shall be authorized to obtain financing, whether institutional or private on behalf of the Limited Liability Company and shall be authorized to execute any instruments that are necessary in order to obtain financing.

Except as expressly provided in this Agreement, no fees, salary or other compensation shall be paid to the Managing Members for the rendition of services to the Limited Liability Company.

A Managing Members' duty of care in the discharge of the Managing Members' duties to the Limited Liability Company and the Members is limited to refraining from engaging in grossly negligent conduct, intentional misconduct, or a knowing violation of law.

To the extent of the Limited Liability Company's assets, and to the extent permitted by law, the Limited Liability Company shall indemnify and hold the Managing Member harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred by the Managing Members by reason of any act or omission of the Managing Members made in good faith on behalf of the Limited Liability Company.

Except as expressly provided elsewhere in this Agreement, any decisions which are to be made by the Members, shall be made by the unanimous vote or consent of the Members

### 13. Duties and Responsibilities of Members

VALDEZ shall be responsible for developing distributorship relationships, sales, hiring sales personnel, provided that the employment terms are approved by unanimous consent of members, train sales personnel.

NEUMAN, Mananging Member shall be responsible for funding the purchase of inventory and funding the operating expenses of the company and shall be responsible for handling the day to day operations of the Limited Liability Company.

### 14.  Assignment of Interests.

Except as otherwise provided in this Agreement, no Member or other person holding any interest in the Limited Liability Company may assign, pledge, hypothecate, transfer or otherwise dispose of all or any part of his interest in the Limited Liability Company, including without limitation the capital, profits or distributions of the Limited Liability Company without having approval in writing by unanimous vote or consent of the Members.

No Member may resign, dissolve or otherwise withdraw from the LLC unless and until such resignation, dissolution or withdrawal has been approved in writing by unanimous vote or consent of all of the Members.

### 15.  Admission of New Member.

The Members may admit new Member (or transferees of any interests of existing Member) into the Limited Liability Company by the unanimous vote or consent of all of the Members.

### 16. Withdrawal Events Regarding Member and Election to Continue the Limited Liability Company.

In the event of the death, retirement, withdrawal, expulsion, or dissolution of a Member, or an event of bankruptcy or insolvency, as hereinafter defined, with respect to a Member, or the occurrence of any other event which terminates the continued membership of a Member in the Limited Liability Company pursuant to the laws of the state of Nevada (each of the foregoing being hereinafter referred to as a **"Withdrawal Event"**), the Limited Liability Company shall terminate 180 days after notice to the Members of such Withdrawal Event unless the business of the Limited Liability Company is continued as hereinafter provided.

Notwithstanding a Withdrawal Event with respect to a Member, the Limited Liability Company shall not terminate, irrespective of applicable law, if within aforesaid 180 day period the remaining Members, by the unanimous vote or consent of all Members (other than the Member who caused the Withdrawal Event), shall elect to continue the business of the Limited Liability Company.

### 17.  Purchase of a Deceased Member's Interest.

Within 60 days after the appointment and qualification of the legal representative or representatives of a deceased Member, or within 120 days after the date of death of a deceased Member if no such legal representative is appointed, such legal representative or representatives or the heirs, distributees or beneficiaries of the deceased Member, as the case may be, shall sell to the other Members the interest in the Limited Liability Company of the deceased Member.  Each of the other Members shall purchase that portion of the interest in the Limited Liability Company of the deceased Member in

proportion to their Members' Percentage Interests, unless they otherwise agree in writing by unanimous vote and consent of the surviving Members.

The purchase price for the interest in the Limited Liability Company purchased pursuant to this Article shall be agreed upon in writing by the Members. If there is no agreement by the Members, the purchase price shall be determined by an independent third party arbitrator.

## 18.  Dissolution and Liquidation.

The Limited Liability Company shall terminate upon the occurrence of any of the following: the election by the Members to dissolve the Limited Liability Company made by the unanimous vote or consent of Members; the occurrence of a Withdrawal Event with respect to a Member and the failure of the remaining Members to elect to continue the business of the Limited Liability Company; the insolvency or bankruptcy of the Limited Liability Company; the sale of all or substantially all of the Limited Liability Company's assets; any event that makes it impossible, unlawful or impractical to carry on the business of the Limited Liability Company; or any other event which pursuant to this Agreement shall cause a termination of the Limited Liability Company.  No dissolution of the Limited Liability Company shall release any of the parties to this Agreement from their contractual obligations under this Agreement.

The proceeds of sale and all other assets of the Limited Liability Company shall be applied and distributed in the following order of priority: (a) to the payment of the expenses of liquidation and the debts and liabilities of the Limited Liability Company, other than debts and liabilities to Members; (b) to the payment of debts and liabilities to Members; (c) to the setting up of any reserves which the Liquidating Agent may deem necessary or desirable for any contingent or unforeseen liabilities or obligations of the Limited Liability Company, which reserves shall be paid over to an attorney-at-law admitted to practice in the State of Nevada as escrowee, to be held for a period of two years for the purpose of payment of the aforesaid liabilities and obligations, at the expiration of which period the balance of such reserves shall be distributed as hereinafter provided; (d) to the Members in proportion to their respective capital accounts

Upon compliance with the distribution plan, the Members shall cease to be such, and the Managing Member shall execute, acknowledge and cause to be filed, with the Secretary of State of the State of Nevada, such certificates and other instruments as may be necessary or appropriate to evidence the dissolution and termination of the Limited Liability Company.

## 19.  Representations Of Members.

Each of the Members represents, warrants and agrees that the Member is acquiring the interest in the Limited Liability Company for the Member's own account as an investment and not with a view to the sale or distribution thereof; the Member, if an individual, is over the age of 21, or if the Member is an organization, such organization is duly organized, validly existing and in good standing under the laws of its State of organization and that it has full power and authority to execute and perform its obligations under this Agreement; and the Member shall not dispose of such interest or any part

thereof in any manner which would constitute a violation of the Securities Act of 1933, the Rules and Regulations of the Securities and Exchange Commission, or any applicable laws, rules or regulations of any State or other governmental authorities, as the same may be amended.

### 20. Notices.

All notices, demands, requests or other communications which any of the parties to this Agreement may desire or be required to give hereunder shall be in writing and shall be deemed to have been properly given if sent registered or certified mail, return receipt requested, addressed as follows: (a) if to the Limited Liability Company, to the Limited Liability Company c/o the Managing Members at the address first above written or to such other address or addresses as may be designated by the Limited Liability Company or the Managing Members by notice to the Members pursuant to this Article (b) if to the Managing Members, to the Managing Members at the address first above written or to such other address or addresses as may be designated by the Managing Members by notice to the Limited Liability Company and the Members pursuant to this Article; and (c) if to any Member, to the address of said Member first above written, or to such other address as may be designated by said Member by notice to the Limited Liability Company and the other Members pursuant to this Article. Each Member shall keep the Limited Liability Company and the other Members informed of such Member's current address.

### 21. Amendments.

This Agreement may not be altered, amended, changed, supplemented, waived or modified in any respect or particular unless the same shall be in writing and agreed to by the unanimous vote or consent of all Members of the LLC. No amendment may be made to the Articles that apply to the financial interests of the Members except by the unanimous vote or consent of all of the Members. No amendment of any provision of this Agreement relating to the voting requirements of the Members on any specific subject shall be made without the unanimous vote or consent of all the Members.

### 22. Covenant not to Compete.

Valdez shall not compete with the business of the Limited Liability Company for a period of ten (10) years, in the development , marketing or sales of beverages in any corporate, partnership, limited liability company or individual capacity.

### 23. Miscellaneous.

This Agreement and the rights and liabilities of the parties shall be governed by and determined in accordance with the laws of the State of Nevada. Every provision of this Agreement is intended to be severable. If any provision of this Agreement shall be invalid or unenforceable, such invalidity or unenforceability shall not affect the other provisions of this Agreement, which shall remain in full force and effect.

The captions in this Agreement are for convenience only and are not to be considered in construing this Agreement. All pronouns shall be deemed to the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require. References to a person or persons shall include partnerships, corporations, limited liability companies, unincorporated associations, trusts, estates and other types of entities. Any one of the Members is referred to herein as a Member. References to the Internal Revenue Code shall mean the Internal Revenue Code of 1986, as amended, and any successor or superseding Federal revenue statute.

This Agreement, and any amendments hereto may be executed in counterparts all of which taken together shall constitute one agreement.

This Agreement sets forth the entire agreement of the parties hereto with respect to the subject matter hereof. It is the intention of the Members that this Agreement shall be the sole source of agreement of the parties, and, except to the extent a provision of this Agreement provides for the incorporation of Federal income tax rules or is expressly prohibited or ineffective under the Limited Liability Company Law of the state of Nevada, this Agreement shall govern even when inconsistent with, or different from, the provisions of any applicable law or rule.

Subject to the limitations on transferability contained herein, this Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective heirs, executors, administrators, successors and assigns.

No provision of this Agreement is intended to be for the benefit of or enforceable by any third party.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement on the date first above written.

STEVEN TROY VALDEZ                    PHILIP NEUMAN