BINGHAM MCCUTCHEN LLP
Peter Obstler (SBN 171623)
peter.obstler@bingham.com
Jee Young You (SBN 241658)
jeeyoung.you@bingham.com
Three Embarcadero Center
San Francisco, CA  94111-4067, U.S.A.
Telephone:  415.393.2000
Facsimile:  415.393.2286
Email:  peter.obstler@bingham.com

Attorneys for Defendants
B2 Brands, Inc., JP Beverages, LLC, Jaime Banfield, Richard Munkvold, Christina Previti, James Previti, Frontier Homes, LLC, and Steven Troy Valdez in his capacity as a Director of B2 Brands, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| Philip Neuman, Hilo At Campbell Hall Associates, LLC,<br><br>  Plaintiffs,<br><br>  v.<br><br>B2 Brands, Inc., JP Beverages, LLC, Jaime Banfield, Richard Munkvold, Christina Previti, James Previti, Frontier Homes, LLC, Steven Troy Valdez,<br><br>  Defendants. | No. EDCV 07-01025 MLG<br><br>**DEFENDANTS B2 BRANDS, INC., JP BEVERAGES, LLC, JAIME BANFIELD, RICHARD MUNKVOLD, CHRISTINA PREVITI, JAMES PREVITI, AND FRONTIER HOMES, LLC'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: February 5, 2010<br>Time:         10:00 a.m.<br>Place:        Courtroom 6A<br>Judge:        Hon. Marc L. Goldman<br>Trial Date:   March 30, 2010 |

A/73280896.3

1

B2 Brands, Inc. ("B2 Brands"), JP Beverages, LLC ("JP Beverages"), Jaime Banfield, Richard Munkvold, Christina Previti, James Previti, and Frontier Homes, LLC (collectively, "B2 Defendants") respectfully submit this Reply Brief In Support of their Motion for Summary Judgment (the "Reply") in the above-captioned action (the "Action").

## I. INTRODUCTION

The threshold issue raised by the B2 Defendants in their Motion for Summary Judgment ("MSJ") is whether those Defendants properly acquired and had the right to use the "trade secrets in the form of formulas, recipes, beverages, marketing materials, trademarks and/or other proprietary information and intellectual property" (collectively, the "Trade Secrets") in the development, production and marketing of the malternative beverages. (TAC ¶ 84.) Based on the evidence in this case, no reasonable jury could conclude that the B2 Defendants acquired or used the Trade Secrets through "improper means":

- B2 Brands was granted the right to use the Trade Secrets by Steven Troy Valdez at the time of its formation in August 2003;
- B2 Brands' rights to use the Trade Secrets constituted an asset of B2 Brands;
- The Joint Ownership Agreement purports to transfer all of the assets of B2 Brands, including the right to use the Trade Secrets, to Neuman and Valdez individually;
- Neither Neuman, as managing member, or anyone else associated with the Neuman-Valdez venture, effectuated the transfer of B2 Brands' assets, including the Trade Secrets, to Neuman or any other third party under Delaware General Corporations Law Section 271; and
- In May 2006, the late John Previti and his widow, Christina Previti paid the debt owed to Kerr (as well as all other outstanding debts

A/73280896.3

1

1  owed by Valdez or B2 Brands) to effectuate a proper purchase of B2
2  Brands and its assets.

3 (*See* B2 Defendants' Statement of Uncontroverted Facts In Support of the MSJ,
4 filed concurrently with the MSJ.)

5  As a result of JP Beverages' purchase of B2 Brands in 2006, the B2
6 Defendants held and continue to hold title to B2 Brands' assets, including the right
7 to use the Trade Secrets. Accordingly, the B2 Defendants cannot be liable as a
8 matter of law for any of the claims in the Third Amended Complaint ("TAC"),
9 including any claims arising from the alleged misappropriation of the Trade
10 Secrets.

## II. ARGUMENT

Philip Neuman and Hilo At Campbell Hall Associates, LLC's (collectively, "Plaintiffs") contention that "triable issues of fact" prevent the Court from granting summary judgment on all claims alleged against the B2 Defendants reflects a misunderstanding of the law governing intellectual property in two important respects: (1) preemption of the non-CUTSA claims applies to all forms of intangible property, not just trade secrets; and (2) liability under CUTSA and the other claims turns on the propriety of the acquisition and or use, not the ownership, of the Trade Secrets. Because Plaintiffs cannot point to any evidence that the B2 Defendants did not have the right to use the Trade Secrets, the Court should grant summary judgment for the B2 Defendants on all claims alleged against them in the TAC.

### A. Preemption Of The Non-CUTSA Claims Does Not Turn On Whether The Intellectual Property Qualifies As A "Trade Secret."

Preemption of the non-CUTSA claims does not turn on whether all of the intellectual property at issue in this Action qualifies as a "trade secret." Under California and federal law, all common law or equitable claims based on the misuse of intellectual property are preempted unless they are specifically pled

under one of the specific state *or* federal statutory causes of action governing the protection of intellectual property.  *See, e.g., K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009) (common law tort claims, including conversion, preempted under CUTSA); *Melchior v. New Line Productions*, 106 Cal. App. 4th 779, 793-94 (2003) (common law tort claims, including conversion, preempted by federal copyright and patent statutes); *accord Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1033-35 (N.D. Cal. 2005) (preempted by CUTSA); *Memory Corp. v. Kentucky Oil Technology, N.V.*, No. C-04-03843 RMW, 2005 WL 1656877, at **4-6 (N.D. Cal. 2005) (slip op.) (preempted under federal copyright laws); *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-20 (D. Del. 2004) (preempted by CUTSA); *Accuimage Diagnostics Corp.*, 260 F. Supp. 2d 941, 953-54 (N.D. Cal. 2003) (same).

  Plaintiffs' contention that a factual dispute exists as to whether some of the intellectual property at issue in this Action qualifies as a "trade secret" has no bearing on whether the remaining non-CUTSA claims are preempted under the state and federal intellectual property laws.  Plaintiffs have not alleged violations of any intellectual property laws, other than CUTSA, including federal statutes governing patent, trademark or copyright infringement.  Accordingly, only Plaintiffs' CUTSA claim can survive preemption.

  Plaintiffs' contention that the intellectual property at issue might not qualify as "trade secrets" also contradicts Plaintiffs' core allegation in the TAC that the property that Defendant "improperly, wrongly and illegally sought to acquire" are "trade secrets":

> [Defendants] misappropriated trade secrets in the form of formulas, recipes, beverages, marketing materials, trademarks and/or other proprietary information and intellectual property…which [*sic*] trade secrets were and are owned by, held by and/or the property, in part, [*sic*] plaintiff Neuman.

A/73280896.3

3

(TAC ¶ 84; *see also id.* at ¶¶ 85-87.)

Finally, Plaintiffs' attempt to create a triable issue of fact by asking this Court to "[*a*]*ssume...*that defendants took 10,000 cases of the beverages and sold them," is also without merit. (Pls' Oppo. to MSJ at 11:4-8 (emphasis added).) Neuman does not allege and cannot point to any evidence that the B2 Defendants illegally took, used, or deprived Plaintiffs of the use of tangible property, such as 10,000 cases of malternative beverage products. Where, as here, "the moving party has carried its burden under Rule 56(c)," the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Amnesty America v. Town of West Hartford*, 288 F.3d 467, 470-71 (2d Cir. 2002) (opposition must reference specific facts, including providing specific record citations).

### B. Plaintiffs' Argument That A Triable Issue Of Fact Exists As To Whether Neuman Holds An Ownership Interest Is Not Material To The Adjudication Of The Claims Against The B2 Defendants.

With respect to the CUTSA claim, Plaintiffs' contention that "triable issues remain as to whether ***Neuman holds an ownership interest*** in the beverages and intellectual property under the Joint Ownership Agreement," misses the point. (Pl. Opp. to MSJ at 11:21-23) (emphasis added). Plaintiffs rest on the erroneous proposition that Neuman's purported "ownership" of the Trade Secrets is sufficient to establish B2 Defendants' misappropriation of intellectual property.

To prevail on a claim for trade secret misappropriation, plaintiff must prove that the defendant "acquired, disclosed, or used the plaintiff's trade secret through improper means...." *Cytodyn, Inc. v. Amerimmune Pharmaceuticals, Inc.*, 160 Cal App. 4th 288, 297 (2008) (citation omitted). "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, or espionage...." Cal. Civ. Code § 3426.1(a). As a result, the threshold

A/73280896.3

4

issue is not whether Neuman holds any interest in the Trade Secrets, but whether Plaintiffs can establish that the B2 Defendants improperly acquired or used the Trade Secrets. The answer is "No."

This Court need only look at the uncontested evidence that B2 Brands was granted the right to use the Trade Secrets by Valdez from the time of its formation in 2003:

- Labels and "point of sales" documents state that "All Trademarks, Copyrights and Patents are licensed to B2 Brands Inc…." (B2 Brands' Point of Sales Documents and Labels (Ex. M));
- All non-disclosure agreements executed with various third parties, such as the brewer, the flavor developer, and Kerr state that "B2 Brands…is the rights owner/holder of its formula and recipe…its 'B2 Beverage recipe', B2 formula, formulation." (10/31/03 Sovereign Flavors Non-Disclosure Agreement ("NDA") (Ex. N) at Addendum 101, ¶ 2; 7/22/03 Lion Brewery Brewing Agreement (Ex. O) at Addendum 101, ¶ 3; 7/20/04 Kerr NDA (Ex. P) at Addendum 101, ¶ 2.)

(*See also* 8/29/06 Affidavit of Farah Bhatti (Ex. MM) at ¶¶ 2, 7, 10; 8/29/06 Affidavit of David Ames (Ex. H) at ¶¶ 7, 8, 9; 8/30/06 Affidavit of Ibrahim Hanna (Ex. FF) at ¶¶ 3, 13, 18.). *See also* Restat. Torts § 757, Comment f ("proper means" includes use of a trade secret under a license from owner of the trade secret).

And because B2 Brands' long-standing right to use the Trade Secrets comprises its core corporate asset, this right could not be taken away by the one-paragraph Joint Ownership Agreement under Section 271. *See Russell v. Morris*, Civ. A. No. 10009, 1990 WL 15618, at *6 (Del. Ch. Feb. 14, 1990); *Katz v. Bregman*, 431 A.2d 1274, 1276 (Del. Ch. 1981). (*See also* B2 Defendants' MSJ, § (III)(C)(1).) Plaintiffs do not argue that Neuman or Valdez properly effectuated

A/73280896.3

5

a transfer of B2 Brands' assets under Section 271. (Pl. Opp. to MSJ at 16:4-14.) As a result, when JP Beverages purchased B2 Brands, it acquired the company's assets, including the right to use the Trade Secrets in the production of malternative beverages.

Notwithstanding the extensive evidentiary record in this Action and the Rescission Action, Plaintiffs cannot point to any evidence from which a reasonable trier of fact could find that B2 Brands did not have the right to use the Trade Secrets. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment."). Plaintiffs' failure to establish this essential element of trade secret misappropriation under CUTSA entitles the B2 Defendants, including the individuals, to summary judgment as a matter of law. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (summary judgment is proper when defendants can show that plaintiffs do not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial).

Plaintiffs' contention that Neuman did not effectuate the transfer of B2 Brands' assets under Section 271 because of Valdez's failure to advise Neuman that "any transfer of the beverages and associated intellectual property was contingent upon approval or consent others including alleged members of the Board of Directors of B2 Brands…," (Pl. Opp. to MSJ at 46-8), fails for two reasons. *First*, Section 271 is mandatory and contains no exemption for business partners who fail to understand the requirements for transferring corporate assets under Delaware law.

*Second*, the failure to insure that a proper asset transfer under Section 271 occurred was Neuman's responsibility and fault. In persuading the court that the agreements with Valdez should not be rescinded, Neuman argued in the Rescission Action that it was his "job" to "take in[to] consideration the consequences of not

A/73280896.3

6

paying a bill, not doing a certain act and doing a certain action, [the managing member] exercise[s] [his] business judgment under the duty of care delineated in the agreement." *See* Transcript of Proceedings in *Valdez v. Neuman*, No. SACV 06-448 CJC (MLGx) (C.D. Cal.) (January 4, 2008) at 88:4-11 (attached as Ex. TT to You Decl.). And Neuman concedes that neither he or any other individual on his behalf completed any due diligence on who held the rights to use the intellectual property, including the Trade Secrets. (Fischer Dep. (Ex. Y to You Dec.) at 70:13-15; *see also* Ex. A at 91:5-92:5, 94:9-13, 95:7-96:15, 97:24-98:8, 118:25-120:12, 134:17-23.) Incredibly, Neuman ignored numerous documents provided to him by Valdez during the period of April 2005 through December 2005, which expressly stated that "B2 Brands…is the rights owner/holder of its formula and recipe." (*See* 7/22/03 Lion Brewery Brewing Agreement (Ex. O) at Addendum 101, ¶ 3; 10/31/03 Sovereign Flavors Non-Disclosure Agreement ("NDA") (Ex. N) at Addendum 101, ¶ 2; 7/20/04 Kerr NDA (Ex. P) at Addendum 101, ¶ 2.) *See also Beck v. Edwards & Lewis*, 57 A. 2d 459, 463-64 (N.J. Ct. Ch. 1948) (purchasers of the assets of a corporation acted at their own "peril" in not insisting upon seeing a copy of a resolution of authority or seeking out any of the other stockholders or directors). And Neuman was also told by Valdez that unless Kerr was paid it was "impossible" to obtain the assets, including Trade Secrets. (*See* Ex. DD at 1; *see also* 9/19/05 Demand Letter from A. Droste to S. Valdez (Ex. EE); Ex. RR at 6:5-12; Ex. G at pp. 256-344; Ex. A at 91:5-92:5, 94:9-13, 95:7-96:15, 97:24-98:8, 118:25-120:12; 134:17-23.)

Neuman's attempt to shift the responsibility to Valdez for the failure to effectuate a valid transfer of B2 Brands' asset under the Joint Ownership Agreement is also completely at odds with Neuman's refusal to pay off any debts, including Kerr, without an independent assessment from his lawyers and staff. This is particularly troubling since Neuman's staff was on notice at all relevant times that B2 Brands was the "owner/rights holder" of the Trade Secrets. (*See,*

A/73280896.3

7

*e.g.,* 10/31/03 Sovereign Flavors NDA (Ex. N) at Addendum 101, ¶ 2.)

### C. No Triable Issues Remain As To Whether Consent Was Required Under The Joint Ownership Agreement To Transfer The Trade Secrets.

Plaintiffs' reliance on one paragraph of a 30-page opposition[1] to argue that a triable issue of fact exists as to whether "Neuman and Valdez understood there were restrictions on use and transfer under the Joint Ownership Agreement," is, as set forth above, irrelevant to whether the Joint Ownership Agreement effectuated a transfer of assets to Neuman and Valdez individually. (Pl. Opp. to MSJ at 29:16-26.) And Neuman's argument constitutes an admission that Neuman, not B2 Defendants, misappropriated the Trade Secrets.

Despite conceding that consent was necessary to use the Trade Secrets, Neuman, unbeknownst to Valdez, formed Premier Beverages on December 16, 2005, and proceeded to conduct the malternative beverages venture as "business as usual" for his own personal gain without Valdez. (Ex. D at 141:12-142:13; 4/11/07 Jeter Dep. (Ex. E) at 16:9-18). Neuman's other contention that consent was not needed to use the trade secrets in furtherance of his Premier Beverages venture because he did not produce any malternative beverages product is incorrect. Under CUTSA, the definition of "use" by improper means is defined as not only manufacturing, production, but also the research or development, or marketing of goods embodying the trade secret. *See PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (2000); *Duncan v. Stuetzle*, 76 F. 3d 1480, 1488 (9th Cir. 1996) (applying California law).

In this Action, Neuman admits that he used the Trade Secrets for, among other things, (1) obtaining pricing for each component for the recipes and formulas, and (2) contracting with third parties such as The Lion Brewery to produce malternative beverages. (*See* 11/5/09 Neuman Dep. (Ex. A) at 113:18-

---

[1] Plaintiffs' Opposition violates Local Rule 11-6 because it exceeds the 25-page limit on a memorandum of points and authorities without first obtaining leave of court.

A/73280896.3                                8

144:4; 12/16/05 Certificate of Formation of Premier Beverages, LLC (Ex. JJ); 1/27/06 Premier Beverages NDA with The Lion Brewery (Ex. KK); Memo. of Dec. (Ex. RR) at 6:14-19; 11/11/09 Jeter Dep. (Ex. D) at 141:12-142:13, 198:22-24, 199:20-4, 27:22-3, 30:4-7, 33:1-3; 4/11/07 Jeter Dep. (Ex. E) at 16:9-18.)

Thus, the only triable issue of fact that Neuman raises regarding whether consent was needed before either party used the Trade Secrets relates to the amount of damages that the B2 Counterclaimants are entitled to in light of Neuman's concession that *he* used the Trade Secrets without consent.

### III. CONCLUSION

The B2 Defendants respectfully request that the Court grant summary judgment on all claims alleged against them and pray for an order dismissing Claims 1-10 of the TAC with prejudice.

DATED: February 1, 2010        Respectfully submitted,

BINGHAM McCUTCHEN LLP

By:     */ s / Peter Obstler*
Peter Obstler
Attorneys for Defendants
B2 Brands, Inc., JP Beverages, LLC, Jaime Banfield, Richard Munkvold, Christina Previti, James Previti, Frontier Homes, LLC, and Steven Troy Valdez in his capacity as a Director of B2 Brands, Inc.

A/73280896.3                9